FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 31 2008
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
WILFRED RATTIGAN, DONOVAN HUTCHINSON,
LUANNE MANNESON, and ANN MARIE RATTIGAN,

CV-08-4419

Plaintiffs,

**COMPLAINT**

-against-

JURY TRIAL
DEMANDED

THE TRIBOROUGH BRIDGES AND TUNNELS
AUTHORITY, a Municipal Corporation; TBTA Officer
DANIEL BELL, TBTA Officer TICEL HOWARD,
TBTA Sergeant KELLY O'SULLIVAN, TBTA Lieutenant
X Booker, TBTA Sergeant X Earhart, and TBTA Officer
LATEEF HOWARD, individually and in their official
capacities,

SIFTON

POHORELSKY, M.J.

Defendants.
------------------------------------------------------------------------x

  Plaintiffs Wilfred Rattigan, Donovan Hutchinson, Luanne Manneson, and Ann Marie Rattigan, by their attorneys Beldock Levine & Hoffman LLP, allege for their Complaint against the Defendants, upon information and belief as follows:

## JURISDICTION

  1. This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state law.

## VENUE

  2. Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which a substantial part of the events and omissions giving rise to the claims occurred

and in which one or more defendants reside.

## PARTIES

3. Plaintiff WILFRED RATTIGAN is and was at all times material herein a citizen and resident of the United States and the State of New York.

4. Plaintiff LUANNE MANNESON is and was at all times material herein a resident of the United States and the State of New York

5. Plaintiff DONOVAN HUTCHINSON is and was at all times material herein a citizen and resident of the United States and the State of New York.

6. Plaintiff ANN MARIE RATTIGAN is and was at all times material herein a citizen and resident of the United States and the State of New York.

7. At all times material herein, defendant TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY ("TBTA") was a New York State public benefits corporation, duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant Bridge and Tunnel Officer ("BTO") DANIEL BELL was at all times material herein a TBTA officer employed by defendant TBTA and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

9. Defendant BTO TICEL HOWARD was at all times material herein a TBTA officer employed by defendant TBTA and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

10. Defendant TBTA Sergeant KELLY O'SULLIVAN was at all times material herein a TBTA officer employed by defendant TBTA and acting under color of law and under color of her authority as an officer, agent, servant and employee of defendant.

11. Defendant TBTA Lieutenant (FNU) BOOKER was at all times material herein a

TBTA officer employed by defendant TBTA and acting under color of law and under color of her authority as an officer, agent, servant and employee of defendant.

12. Defendant TBTA Sergeant (FNU) EARHART was at all times material herein a TBTA officer employed by defendant TBTA and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

13. Defendant BTO LATEEF HOWARD was at all times material herein a TBTA officer employed by defendant TBTA and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

## FACTUAL ALLEGATIONS AND FEDERAL CLAIMS FOR RELIEF

14. Plaintiffs WILFRED RATTIGAN, ANN-MARIE RATTIGAN, and HUTCHINSON are all originally from Jamaica, and are of African descent. Plaintiff MANNESON is originally from South Africa, and is also of African descent.

15. Plaintiff WILFRED RATTIGAN is a 20-year veteran agent with the Federal Bureau of Investigation ("FBI"). He is currently the Assistant Special Agent in Charge (ASAC) of the FBI's Jackson Field Office, headquartered in Jackson, Mississippi.

16. On August 4, 2007, at approximately 9:15 p.m., plaintiffs were traveling in a black Mercedes Benz in Queens, on their way to see a movie in Manhattan. Plaintiff WILFRED RATTIGAN was driving, plaintiff HUTCHINSON was in the passenger seat, and plaintiffs ANN MARIE RATTIGAN and MANNESON were in the back seat.

17. At the entrance to the Queens Midtown Tunnel, plaintiff WILFRED RATTIGAN stopped in cash lane 3 to pay the toll.

18. The toll booth in cash lane 3 was being manned by defendant BELL.

19. When plaintiff WILFRED RATTIGAN attempted to hand defendant BELL $4.50

for the toll, defendant BELL refused to accept the money, saying that the bills were folded.

20. Rather than argue with defendant, plaintiff WILFRED RATTIGAN withdrew his hand, smoothed the bills, and again attempted to hand them to defendant BELL. As plaintiff WILFRED RATTIGAN did so, defendant BELL began saying in sum and substance that plaintiff "should know better than to give me folded money."

21. Defendant BELL then said to plaintiff, in sum and substance, "Dude, you can't come up here with folded money and give it to me."

22. Upon being called "dude," plaintiff WILFRED RATTIGAN asked defendant BELL what he had just called him. Defendant BELL replied that he had called plaintiff "sir." Words were then exchanged between defendant BELL and plaintiff over the use of the word "dude."

23. Upset by defendant BELL's continued rudeness, Plaintiff WILFRED RATTIGAN asked to speak with defendant BELL's supervisor. Defendant BELL stated, in sum and substance, "Oh, you want my supervisor, you're going to get my supervisor, you're going to get my supervisor," and immediately pushed a call button beneath the counter in his booth, causing a bell to sound.

24. Plaintiff WILFRED RATTIGAN again tried to hand defendant BELL the appropriate change, with the bills smoothed flat and perfectly aligned. Defendant BELL leaned back into his booth and again refused to accept them.

25. Upon information and belief, defendant BELL's actions in refusing to accept plaintiff WILFRED RATTIGAN's money, treating plaintiff WILFRED RATTIGAN with rudeness and hostility, and unnecessarily initiating and escalating the conflict between them, were motivated by racial animus.

26. While the parties were waiting for a supervisor to arrive, defendant TICEL HOWARD approached cash lane 3, stood between the tollbooth and the vehicle by the driver's side rear door, and asked defendant BELL what was going on.

27. Throughout this time, plaintiff WILFRED RATTIGAN was holding the toll money in his left hand in a position visible to defendants BELL and TICEL HOWARD.

28. In anticipation of the supervisor's arrival and the fact that he would likely be asked for identification, plaintiff WILFRED RATTIGAN reached onto the floor with his right hand and pulled up his gym bag in order to retrieve his official FBI identification badge, which was inside. The badge was in the outside front pocket of the bag. Plaintiff WILFRED RATTIGAN's service weapon was in a smaller bag inside the separate main compartment of the gym bag.

29. Plaintiff WILFRED RATTIGAN's badge contained a photograph of plaintiff and clearly identified plaintiff WILFRED RATTIGAN as an FBI agent.

30. As plaintiff WILFRED RATTIGAN withdrew his identification badge from the bag, he transferred the money from his left hand to his right hand in order to open the badge. As he did so, defendant TICEL HOWARD asked plaintiff what was in the bag. Plaintiff WILFRED RATTIGAN flipped open his badge, held it out toward defendants BELL and TICEL HOWARD, and then responded, "A weapon and here is my identification."

31. At the time plaintiff WILFRED RATTIGAN uttered these words, both of his hands were plainly visible and he was holding the toll money in his right hand and the badge open and prominently displayed in his left hand.

32. Without looking at the badge, defendant TICEL HOWARD drew his firearm with his right hand and pointed it at plaintiff WILFRED RATTIGAN.

33.     Defendant TICEL HOWARD grabbed plaintiff WILFRED RATTIGAN's badge with his left hand and threw it on the roof of the car without looking at it, saying, "I don't give a fuck who you are."

34.     As this was happening, defendant BELL also drew his firearm and aimed it at plaintiff WILFRED RATTIGAN. In an apparent attempt to exit the booth, defendant BELL began pushing the door of the booth into the back of defendant TICEL HOWARD, who was pointing his gun at plaintiff WILFRED RATTIGAN's head.

35.     Within moments of this happening, the plaintiffs were surrounded by approximately eight officers, all of whom had their guns drawn and pointed at plaintiffs.

36.     Upon information and belief, defendants LATEEF HOWARD, EARHART, and BOOKER were among those officers who responded to the alarm and approached the car with guns drawn.

37.     As the officers converged on the vehicle, one officer ran over to the driver's side behind defendant TICEL HOWARD, pushed defendant TICEL HOWARD's gun arm aside, and also began pointing his firearm at plaintiff WILFRED RATTIGAN's head.

38.     All of the officers were extremely agitated, and they began shouting contradictory instructions at plaintiff WILFRED RATTIGAN, some telling him to get out of the car, some telling him to put his hands up in the air, and others telling him to put his hands on the dashboard.

39.     In order to placate and calm the officers, plaintiff WILFRED RATTIGAN told the officers that he was going to place his hands on the dashboard where the officers could see them, and promptly placed both hands on the dashboard.

40.     Plaintiffs HUTCHINSON, MANNESON, and ANN MARIE RATTIGAN were

ordered out of the car at gunpoint.

44. Plaintiff HUTCHINSON was made to stand up against the car at gunpoint, but was not searched or patted down.

42. A male officer pressed plaintiff ANN MARIE RATTIGAN's shoulder against the car with one hand while pointing his gun at her with the other.

43. Plaintiff ANN MARIE RATTIGAN was not searched or patted down.

44. Plaintiff MANNESON was taken to the rear of the car by a male officer. The male officer ordered her to place her hands on the trunk, and proceeded to brace plaintiff MANNESON against the car with one hand on her shoulder and another on her midsection. The male officer continued to touch plaintiff MANNESON in this manner for several minutes during the course of her detention, despite the presence of multiple female officers.

45. At all times prior to the arrival of defendant O'SULLIVAN on the scene, the officers continued to act in an extremely agitated and disorganized manner, screaming and cursing at plaintiffs and delivering contradictory or confusing orders to plaintiffs, all with their guns drawn and pointed at plaintiffs.

46. While plaintiffs HUTCHINSON, MANNESON, and ANN MARIE RATTIGAN were being removed from the car, defendant O'SULLIVAN approached the driver's side of the vehicle and asked what was going on.

47. Defendant BELL stated to defendant O'SULLIVAN, in sum and substance, that plaintiff WILFRED RATTIGAN "went into his bag for a weapon."

48. Plaintiff WILFRED RATTIGAN stated to defendant O'SULLIVAN that he was an FBI agent, and that he gone into his bag for his identification. At no time did the plaintiff ever put his hand on his weapon. Plaintiff further advised defendant O'SULLIVAN that

defendant BELL had refused to accept his toll payment and that he had been rude to plaintiff.

49.     Defendant O'SULLIVAN directed defendant BELL, who still had his gun drawn and aimed at plaintiff WILFRED RATTIGAN, to holster his weapon.

50.     Defendant O'SULLIVAN ordered plaintiff WILFRED RATTIGAN to get out of the car with his hands up. Plaintiff complied, standing next to the driver's-side door with his hands on the roof of the car.

51.     Defendant O'SULLIVAN retrieved plaintiff WILFRED RATTIGAN's FBI badge from the roof of the car and looked at it. Defendant O'SULLIVAN stated, in sum and substance, "This guy is an FBI agent."

52.     Defendant TICEL HOWARD began yelling, in sum and substance, "Fuck him, I don't give a fuck who he is, if the roles had been reversed he would have given me the bullet," and that "the Feds would have riddled me with bullets." Defendant O'SULLIVAN was forced to tell defendant TICEL HOWARD to "calm down."

53.     Defendant O'SULLIVAN showed the badge to defendant BOOKER, who was standing near the rear of the vehicle. Defendant BOOKER responded, in sum and substance, "Fuck him, I don't give a fuck who he is."

54.     Defendant O'SULLIVAN attempted to calm the officers down, saying, in sum and substance, "Everybody just settle down, be quiet, this is an agent."

55.     At all times that the officers had their weapons drawn and trained on plaintiff WILFRED RATTIGAN, and at all times during and after his removal from the vehicle, plaintiff WILFRED RATTIGAN's hands were visible, his right hand was empty, and he was holding the toll money and several pieces of paper in his left hand.

56.     At no time during the incident did any of the officers inquire what sort of weapon

plaintiff WILFRED RATTIGAN had, and none of the officers attempted to move or retrieve the weapon from the gym bag.

57. Even after all plaintiffs were firmly under the control of various officers, multiple officers, including defendants BELL and TICEL HOWARD, kept their guns drawn and aimed at plaintiffs.

58. After plaintiff WILFRED RATTIGAN was removed from the car and placed under the control of two officers at the front of the car, defendant O'SULLIVAN asked him for another piece of identification and for the telephone number and address of his employer. Upon receiving permission from defendant O'SULLIVAN to reach into his pocket, plaintiff WILFRED RATTIGAN produced his driver's license to defendant O'SULLIVAN and orally conveyed the employer information.

59. After confirming with defendant BOOKER that the license and badge matched, defendant O'SULLIVAN permitted the plaintiffs to re-enter the vehicle, and allowed plaintiff WILFRED RATTIGAN to pull the vehicle over to the side of the road. Defendant BOOKER confirmed via phone that plaintiff WILFRED RATTIGAN was an FBI officer.

60. As plaintiff WILFRED RATTIGAN got back into his vehicle, defendant BELL began taunting him, saying, in sum and substance, "Oh you wanted my supervisor, well you got my supervisor."

61. Because the incident involved the drawing of firearms, plaintiffs were asked to file voluntary statements with the TBTA. Each plaintiff did so except plaintiff HUTCHINSON, who was too upset to make a statement.

62. Upon information and belief, in the four years prior to this incident, defendant BELL had already received nine separate complaints against him concerning allegations of

rudeness and hostility to TBTA patrons.

63. Upon information and belief, prior to this incident, defendant TICEL HOWARD was also the recipient of complaints concerning rudeness and hostility to TBTA patrons.

64. The acts and conduct described above were performed under color of law and violated plaintiffs' rights:

    (a) to be free from unreasonable seizure of their persons;

    (b) to the equal protection of the laws;

    (c) to equal privileges and immunities of the laws; and

    (d) to make and enforce contracts;

in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1981 and 1983.

65. Upon information and belief, defendant TBTA by its policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue; and/or engendered and fostered a climate to allow or encourage those acts to continue.

66. Moreover, upon information and belief, the actions of the individual defendants resulted from and were taken pursuant to a de facto policy and/or well-settled and widespread custom and practice of the TBTA, which is implemented by Bridge and Tunnel Officers of said public benefit corporation: to detain and arrest persons without cause; to physically and verbally engage persons in the absence of any need to resort to physical force or oral abuse; to employ weapons and the threat of deadly force in situations where they are not warranted; to deny individuals the right to make and enforce contracts; and to take the foregoing actions under

motivation of racial animus.

67. Upon information and belief, the existence of such de facto policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the TBTA for a substantial period of time.

68. Upon information and belief, despite knowledge of such illegal de facto policies and practices, the supervisory and policy-making officers and officials of the TBTA have not taken adequate steps to terminate those policies and practices, have not disciplined individuals who engage in such practices, or otherwise properly trained TBTA officers with regard to the constitutional and statutory limits on the exercise of their authority, and have instead sanctioned and ratified and allowed those policies, customs and practices through their deliberate indifference to or negligent disregard of the effect of those policies, customs and practices upon the constitutional rights of TBTA patrons.

69. Upon information and belief, and without limiting the foregoing, the TBTA has specifically failed to terminate said practices in the following manner:

   a. Has failed to institute police officer selection and training programs capable of detecting, reducing or eliminating racial and class-based prejudice;

   b. Has failed to properly train, instruct, and discipline police officers with regard to the use of force;

   c. Has failed to properly train, instruct, and discipline police officers with regard to reasonable searches and seizures;

   d. Has failed to properly train, instruct, and discipline police officers with regard to their duty to protect citizens from other officers' excessive use of force or other misconduct;

e. Has failed to properly train, instruct or discipline police officers with respect to use of their authority.

70. Defendant TBTA is directly liable and responsible for the acts of the individual defendants because it has repeatedly and knowingly failed to properly supervise, train and discipline said officers and/or agents and because it repeatedly and knowingly failed to enforce the rules and regulations of the TBTA and the laws of the State of New York and the United States.

71. The knowing and repeated failure of the defendant TBTA to properly supervise, train and discipline said officers and/or agents actually caused the injuries to plaintiffs alleged herein.

72. Upon information and belief, defendant TBTA knew or should have known that the acts alleged herein would deprive plaintiffs of their rights without due process of law, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1981, and Article 1 §§ 1, 11 and 12 of the Constitution of the State of New York, including, without limitation, such rights as plaintiffs' rights to freedom from illegal seizure of his person, freedom from loss of liberty, equal protection of the laws, equal privileges and immunities under the laws, and to make and enforce contracts.

## STATE LAW CLAIMS FOR RELIEF

73. The allegations of the preceding paragraphs are incorporated by reference herein.

74. The acts and conduct of the defendants complained of herein constitute assault, battery, false arrest and imprisonment, negligence and gross negligence, and negligence and gross negligence in training, hiring and supervision under the laws of the State of New York.

75.     The acts and conduct of defendants violated plaintiffs' rights under Article 1, §§ 1, 11 and 12 of the New York State Constitution.

76.     Plaintiffs WILFRED RATTIGAN, ANN-MARIE RATTIGAN, HUTCHINSON, and MANNESON timely filed Notice of Claims for their claims arising from incidents on with the TBTA.

77.     More than thirty (30) days have elapsed since service of the Notice of Claim, and the Comptroller of the TBTA and defendant TBTA have neglected and/or refused to adjust or pay said claims.

78.     Defendant TBTA is liable for the actions of the individual defendants under the doctrine of respondeat superior.

WHEREFORE, plaintiffs WILFRED RATTIGAN, ANN-MARIE RATTIGAN, HUTCHINSON, and MANNESON demand judgment and pray for the following relief, jointly and severally, against the defendants:

    a.  full and fair compensatory damages in an amount to be determined by a jury;

    b.  punitive damages in an amount to be determined by a jury;

    c.  interest, costs and the reasonable attorneys' fees and disbursements of this action;

    d.  and such other and further relief as appears just and proper.

Dated: New York, New York
       October 30, 2008

                                              JONATHAN C. MOORE (JM 6902)
                                              BELDOCK LEVINE & HOFFMAN LLP
                                              99 Park Avenue, Suite 1600
                                              New York, New York 10016
                                              (212) 353-9587

                                              *Attorneys for the Plaintiffs*